495 P.2d 315

**The STATE of Utah, Plaintiff and Respondent,**

v.

**John Walter BOYLAND, Defendant and Appellant.**

**No. 12448.**

Supreme Court of Utah.
March 20, 1972.

---

2. 9 A.L.R. 985; Jones on Evidence, V. 3, Sec. 536.

D. Gilbert Athay, Bruce Lubeck, Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., David S. Young, Chief Asst. Atty. Gen., William T. Evans, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CALLISTER, Chief Justice.

Defendant was convicted, upon a jury verdict, of the crime of first-degree murder. The jury recommended leniency, and defendant was sentenced to life imprisonment. The prosecution proceeded against defendant under the felony murder rule as provided in § 76–30–3, U.C.A.1953.

> Every murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery . . . is murder in the first degree. . . .

On appeal, defendant urges that the trial court erred in its denial of a motion to dismiss on the ground that there was insufficient evidence that a robbery had been committed to submit the case to the jury under the felony murder rule.

The evidence indicated that the victim, Thomas Fred Carter, died of a gunshot wound in the brain, in a hotel room in Salt Lake City on June 2, 1970. A policeman, who was dispatched to the scene of the reported shooting, observed a man run from the hotel, jump in an automobile, and drive away. The officer pursued the vehicle for a course of five blocks, during which time the occupants of the car disposed of a gun and the victim's wallet. After defendant's arrest, the victim's driver's license was discovered on defendant's person at the police station.

Defendant testified that he had shot the victim when the gun accidentally dis-

charged. Defendant explained that he had gone with two friends to the hotel room of Jane Winn to inform her that her friend, who had been involved in an altercation earlier in the evening, was not seriously injured. According to defendant, he knocked on the door, and Jane emerged crying. Jane had been compensated for her services as a prostitute by the victim, and she testified that she was tired and upset at the time she responded to the knock on the door. Defendant stated that he took out his gun, loaded it, and entered the room, where he observed a man's trousers and wallet on a chair. He claimed that he took the wallet and removed the driver's license therein for the purpose of identification of Jane's customer. The victim emerged from the bathroom and offered outraged expressions in regard to defendant's presence. Defendant directed the victim to lie down on the floor and during this time the weapon discharged. Defendant claimed that he became confused and put the victim's wallet and license in his pocket and fled the scene to the motor vehicle, where he was subsequently apprehended.

Section 76–51–1, U.C.A.1953, provides:

Robbery is the felonious taking of personal property in the possession of another from his person, or immediate presence against his will, accomplished by means of force or fear.

Defendant contends that the only evidence to support the theory that he was perpetrating a robbery when the victim was killed was his possession of the victim's wallet and driver's license.

■ Although possession of stolen property would not, standing alone, be sufficient to sustain a conviction for robbery; yet, as evidence, its quality is of such high degree that only slight corroborative proof of other inculpatory circumstances will warrant a conviction.[1]

■ The evidence established that the defendant walked into the hotel room with a loaded pistol, picked up the victim's wallet, and shot and killed the victim when he emerged from the bathroom and protested the defendant's presence. The defendant took the victim's personal property and fled the scene. Such overt acts clearly justify an inference that defendant had a specific intent to commit robbery.[2] The trial court was not required to accept as conclusive defendant's explanation as to the reason for the killing and the taking of the victim's personal property. Under the evidence and the inferences to be drawn

1. People v. Yates, 165 Cal.App.2d 489, 332 P.2d 314, 316–317 (1958).

2. State v. Kazda, 15 Utah 2d 313, 317, 392 P.2d 486 (1964); People v. Imbler, 57 Cal.2d 711, 21 Cal.Rptr. 568, 371 P.2d 304, 306 (1962).

therefrom, the trial court properly submitted the matter to the jury.[3]

Defendant further contends that the trial court erred when it denied his motion for a mistrial, after the prosecution called witness, Lawrence E. Richardson, to the stand in the presence of the jury, while knowing that the witness would assert his privilege against self-incrimination in regard to questions about his whereabouts on the night of the incident and his relationship to Jane Winn.

Initially the prosecution had entered into a stipulation which was read to the jury that Jane Winn, Gregg Kelly, and Lawrence Richardson were subpoenaed by the State, and if they were placed on the stand and interrogated, they would refuse to answer certain questions on the ground that the answers might tend to incriminate them. Thereafter, defendant testified, and the prosecution called Winn and Richardson in rebuttal. Winn offered vital testimony prior to asserting her privilege. Richardson, on the other hand, asserted his privilege after answering only a few prefatory questions. The trial court instructed the jury that it was the constitutional privilege of a witness to refuse to testify and that the jury was not to speculate what the

testimony might have been, and was not to draw any inference for or against defendant.

Defendant asserts that, even with this cautionary instruction, the prosecutorial misconduct of calling a witness solely for the purpose of asserting his constitutional privilege against self-incrimination constituted prejudicial error.

 This court will not deem an error prejudicial, unless it has affected the substantial rights of the accused.[4]

Defendant claims that a strong inference was raised in the minds of the jury that the witnesses were engaged in some type of criminal activity and that was the reason they refused to answer. Under the circumstances of the instant case, this assertion is insufficient, since the witnesses were neither codefendants nor was there any indication in the record that they had been charged with any crime arising out of the incident, and their refusal to answer did not establish any of the vital elements of the charge against defendant.[5]

Defendant does not assert and the circumstances do not justify a denial of his rights under the confrontation clause, i. e., the inferences from the witness' refusal to

3. See People v. Jennings, 158 Cal.App.2d 159, 322 P.2d 19, 23 (1958).

4. § 77–42–1, U.C.A. 1953; State v. Neal, 1 Utah 2d 122, 126–127, 262 P.2d 756 (1953).

5. State v. Chaffin, 92 Idaho 629, 448 P.2d 243, 248 (1968).

answer did not add critical weight to the prosecution's case in a form not subject to cross-examination.[6]

Defendant invokes the theory stated in Namet v. United States,[7] that "error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege." However, the court further observed that reversible error in not invariably committed whenever a witness claims his privilege against self-incrimination, and the courts must look to the surrounding circumstances in each case. In cases where such episodes were no more than minor lapses through a long trial, courts have not found reversible error. Furthermore, even when the objectionable inferences might have been found prejudicial, it has been held that instructions to the jury to disregard them sufficiently cured the error.[8]

The conclusion of the court is particularly applicable in the instant case:

We cannot find that these few lapses, when viewed in the context of the entire trial, amounted to planned or deliberate attempts by the Government to make capital out of witnesses' refusals to testify. . . .[9]

The judgment of the trial court is affirmed.

TUCKETT, HENRIOD, ELLETT and CROCKETT, JJ., concur.

---

6. Douglas v. Alabama, 380 U.S. 415, 420, 85 S.Ct. 1074, 13 L.Ed.2d 934, 938 (1965).

7. 373 U.S. 179, 186, 83 S.Ct. 1151, 1154–1155, 10 L.Ed.2d 278, 283 (1963).

8. 373 U.S. 187, 83 S.Ct. 1151.

9. 373 U.S. 189, 83 S.Ct. 1156; also see United States v. Brickey, (C.A. 8th 1970) 426 F.2d 680, 688.